BÖWE PASSAT REINIGUNGS–UND WÄSCHEREITECHNIK GMBH & Boewe–Passat Drycleaning & Laundry Machinery Corporation, Plaintiffs,

v.

UNITED STATES & U.S. Department of Commerce, Defendants.

Slip. Op. 97–72.
Court No. 92–01–00058.

United States Court of International Trade.

June 3, 1997.

Barnes, Richardson & Colburn, Rufus E. Jarman, Jr., New York City, Ronald A. Oleynik, Washington, DC, for Plaintiffs.

Frank W. Hunger, Asst. Atty. Gen. of U.S., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta Melnbrencis, for Defendants; Robert Heilferty, Atty–Advisor, Office of Chief Counsel for Import Admin., Dept. of Commerce, of counsel.

## MEMORANDUM OPINION & ORDER

POGUE, Judge.

This matter is before the court for review of the United States Department of Commerce ("Commerce") redetermination ("Remand III") pursuant to remand. *Böwe Passat Reinigungs–Und Wäschereitechnik Gmbh v. United States,* 951 F.Supp. 231, 240 (CIT 1996) (*"Böwe III"*). Several remands have resulted from judicial review of Commerce's final determination in *Drycleaning Machinery from Germany,* 56 Fed.Reg. 66, 838 (Dep't Comm. Dec. 26, 1991) (final results admin. review).[1] The first resulted from *Böwe Passat Reinigungs–Und Wäschereitechnik Gmbh v. United States,* 17 CIT 335, 1993 WL 179269 (1993) (*"Böwe I"*), wherein the Court directed Commerce to consider new record evidence[2] in evaluating plaintiffs' ("Böwe's"), claimed circumstance of sale and level of trade adjustments. *Id.* at 343. After reviewing Commerce's first redetermination ("Remand I"), this Court sustained the Department's denial of Böwe's claimed circumstance of sale adjustments as well as three methodological issues contested during the administrative review. *See Böwe Passat Reinigungs–Und Wäschereitechnik Gmbh v. United States,* 926 F.Supp. 1138, 1151 (CIT 1996) (*"Böwe II"*). The Court

---

1. Familiarity with each of the Court's prior opinions in this case is presumed.

2. Commerce was ordered to consider Böwe's compendium of documents ("Compendium") which detailed certain expenses that Böwe want-

ed subtracted from Commerce's calculation of the foreign market value of its dry cleaning machinery, either as "level of trade" or "circumstances of sale" adjustments. *Böwe I* at 343.

remanded the issue of Böwe's claimed level of trade adjustments. *Id.* The Court concluded that Commerce had imposed an unreasonable burden of proof on Böwe. *Id.* at 1142–1144. Specifically, the Court concluded that Commerce had effectively required Böwe to produce evidence of sales at different levels of trade in its home market to establish the level of trade adjustment to Commerce's satisfaction. Böwe, however, only sold at the end user level of trade in the home market, and, therefore, could not meet this burden. Such an impossible burden would have been unreasonable, and therefore, not in accordance with law. *See NEC Home Elecs., Ltd. v. United States,* 54 F.3d 736, 745 (Fed.Cir.1995) (imposing impossible burden represents an abuse of ITA's discretion).

In the second remand redetermination ("Remand II"), Commerce elaborated on the reasons for its denial of the level of trade adjustments. Commerce recognized that requiring actual home market data of sales at two levels of trade was impossible. Remand II at 7. Commerce stated that it was not requiring such evidence of Böwe. *Id.* Instead, Commerce said that the evidence Böwe had submitted in support of its claimed adjustments had "gaps and inconsistencies" that undermined Böwe's claim. Remand II at 8. In reviewing the second redetermination, this Court stated that Commerce's elaboration of the reasons supporting denial of the adjustments "cure[d] the otherwise unreasonable burden of proof," *Böwe III,* 951 F.Supp. at 235; the Court then evaluated whether record evidence supported Commerce's "gaps and inconsistencies" rationale. *Id.* The Court sustained Commerce's denial of level of trade adjustments for four of the five expense categories, finding that the record supported Commerce's conclusion that gaps and inconsistencies undermined the data. *Id.* at 235–238. Nevertheless, in reviewing Commerce's rationale for rejecting the adjustment for order entry and control expenses, the Court interpreted Commerce's stated reasons as still imposing an unreasonable burden on Böwe. *Id.* at 238–240. Accordingly, the Court remanded the issue of

the denial of this expense category. *Id.* at 240.

In Remand III Commerce clarified its denial of the level of trade adjustments as follows: [3]

. . .

With regard to Böwe's OE & C expenses, however, the Court appears to read the Second Remand as indicating that the Department applied a different standard of proof to the OE & C expenses than that applied to the other four categories of expenses. This belief apparently stems from the Department's failure to articulate clearly its conclusions regarding the evidence Böwe supplied to support this claimed adjustment. The Court (and plaintiff) read our statements that "no record evidence exists . . . for sales to domestic distributors" concerning the functions of OE & C employees, and that "Böwe has presented no information to indicate that these employee functions would differ for distributor sales," as a *de facto* requirement that Böwe provide actual data on these non-existent home market sales. *See Böwe III* at 239. However, as the Department made clear later in its Second Remand:

> Böwe's claim for a LOT adjustment did not depend upon Böwe supplying data on home market sales to distributors, as the Department knew . . . that these data are non-existent. Rather, our careful analysis of each of Böwe's LOT claims leads us to conclude . . . that Böwe's claims do not provide the Department with a reliable basis for calculating an adjustment to FMV.

Second Remand at 24.

Our reference to "no evidence" and "no information" on the record concerning "sales to domestic distributors" apparently left the impression that the Department's analysis of Böwe's OE & C expenses focused solely on the domestic market to the exclusion of all other information. Because Böwe had no sales at the distributor level of trade such an analytical approach

---

**3.** Commerce's redetermination, Remand III, was not published in the Federal Register. The

Court, therefore, has quoted the pertinent portions of the results in their entirety.

would foreclose a LOT adjustment for Böwe. Therefore, we did not use such an approach. In fact, we were looking for Böwe to supply worksheets or narrative explanation (as opposed to an unsupported percentage adjustment) which would support Böwe's otherwise unsubstantiated claims and which would permit the Department to perform an independent evaluation of Böwe's LOT claim. The Department examined Böwe's OE & C expenses against the same standard of proof applied to Böwe's other claims: for each, the Department required Böwe to demonstrate that sales to one level of trade in the home market were more costly than sales to the other level of trade in the United States, and to demonstrate that the cost differential was reflected in price.

As we explain further below, our final conclusion regarding this adjustment has not changed: gaps and inconsistencies in Böwe's submissions preclude this adjustment Böwe has not demonstrated adequately that sales *to one level of trade* in the home market are more costly than sales *to the other level of trade* in the United States. The Compendium, upon which Böwe's LOT claims ultimately rely, reflects the number of minutes spent by OE & C employees on "domestic" market sales versus "export" sales. While we know that the home market was limited to sales to the end user level of trade, we do not know the levels of trade included in the "export" category, which encompasses more than just the U.S. market. In fact, the "export" market included sales to Australia, Austria, Canada, England, France, Italy, New Zealand, Portugal, Saudi Arabia, the Soviet Union, and Turkey. *See* Questionnaire Response at A–1 through A–4; Supplemental Response at 2. The Compendium provides no further differentiation by country. Moreover, Böwe supplied no data indicating the levels of trade found in these markets. Sales to these countries may have involved end users, distributors, or any number of other distinct levels of trade. The record on this point is silent. In addition, we have no means of isolating the levels of trade to which Böwe sells, as opposed to other market conditions unique

to a specific country, which may account for the significant amount of time spent on home market sales. As one example of these market conditions, in the underlying review Böwe stresses the stringent environmental regulations governing the sale of drycleaning machinery in the home market. *See* Questionnaire Response at A5 and A6; Böwe's October 9, 1991 Case Brief (Case Brief) at 7 through 9; Hearing Transcript at pages 32 through 46. Böwe explains that these regulations are far more burdensome than are similar requirements in the United States, noting that home market customers are required to purchase a separate air-filtering absorber with each drycleaning machine. *See* Hearing Transcript at 39. It is important to note that there may be other aspects of the home market (more exacting labor or occupational safety regulations, or tax laws, for example) which would increase the administrative burden of Böwe's home market sales: such factors operate independently of levels of trade. Thus, the Compendium, and the entire record, provide no appropriate basis for the comparison of home market and U.S. levels of trade necessary to determine whether Böwe's sales to one level of trade in the home market were more costly than its sales to a different level of trade in the United States. The most we can say is that Böwe has demonstrated that its sales to the home market are more costly (in terms of OE & C labor) than its sales to *export markets generally* (based solely on the gross amount of time OE & C employees devoted to the respective markets).

Further, Böwe has failed to demonstrate to the satisfaction of the Secretary that the claimed LOT adjustment is limited to differences which are "attributable to the different levels of trade, rather than to other factors." *See NTN Bearing Corp. v. United States*, 905 F.Supp. 1083 (CIT 1995). Böwe based its claimed LOT adjustment for OE & C expenses on its unsupported assertion that it incurs additional expenses for "administration of commissions, trade-ins, special discounts and financing, special options, scheduling and paperwork as to installation, technical ser-

vices, official government reporting, etc." Böwe's March 1, 1991 Questionnaire Response (Questionnaire Response) at B–11. At no time did Böwe provide further explanation of what it meant by this statement. Böwe did assert that distributors would "assume many of the cost elements" which were borne by Böwe in selling to end users in the home market. *See* Böwe's April 29, 1991 Supplemental Questionnaire Response (Supplemental Response) at 3. In its Second Remand the Department attempted to illustrate by example where Böwe's claim lacked support in the evidence of record. Apparently, the Department's choice of language instead conveyed the impression that it had confused the costs of certain commissions, discounts, and so forth with the costs associated with administering these programs. However, it is clear from the evidence submitted by Böwe, including the new information submitted to the Court for the first time in Böwe's August 7, 1996 "Plaintiff's Comments on Remand Determination" (Remand Comments), that the very differences cited by Böwe in defense of its LOT argument simply do not obtain. The record evidence does not reflect the differences due to costs associated with administering the programs cited by Böwe. Furthermore, certain evidence contradicts Böwe's claims.

For example, Böwe claims that it would incur lower administrative costs for discount programs because it would offer "big, uniform discounts to distributors and a variety of small, sometimes special discounts to end users." *Böwe III* at 240. The record evidence belies this claim. When asked to report its home market discounts (all to end users), Böwe listed only cash discounts for prompt payment. These discounts, "freely offered," were "always available" and were often granted even though the customer paid after the deadline. *See* Questionnaire Response at B–3. As to its U.S. sales to distributors, Böwe reported a single discount rate it routinely offered. Therefore, in comparing the home market end-user discounts to U.S. distributor discounts, we find that Böwe offered a single big discount to the

U.S. and a single small discount to the home market. We do not see how the administrative burden and amount of paperwork for these respective arrangements would differ measurably, nor did Böwe submit any evidence of this.

As the Court suggests, the situation with respect to commissions is the same, but supports the opposite conclusion from that urged by Böwe. Böwe reported two commission rates for its sales to end users in the home market and two commission rates for its sales to distributors in the United States. While the commission *rates* are different, we do not have a scintilla of evidence to suggest that the burden of *administering* the respective commission programs would differ at all, as in both cases they involve the same number of options.

With respect to the other activities that Böwe claims would affect its home market selling expenses to distributors, in our Second Remand we noted that Böwe "provided no evidence to support its assertion that it would *not* incur these expenses if it sold to distributors." Second Remand at 15 (original emphasis). As indicated above at page 6, the evidence referred to was, obviously, not evidence from Böwe's home market sales to distributors; we cannot ask Böwe to provide that which never existed. Böwe *did* have data regarding its sales to distributors in the United States and its sales of subject merchandise to distributors in other markets. *See, e.g.,* Case Brief at 6. Böwe may also have possessed data on its sales of other products to distributors in the home market. While we will not speculate here as to the weight the Department would accord specific evidence not before it, Böwe had this evidence at hand, and, from it, Böwe could have fashioned the "worksheets and narrative explanation" lacking in this case. However, Böwe has supplied nothing beyond its unsupported assertions by which we can measure the relevance or impact of these activities upon Böwe's selling expenses at different levels of trade.

Finally, as to Böwe's claim that it would reduce its overall OE & C expenses by 52

percent if it sold to distributors, we note that this Court approved of our rejection of similar unsubstantiated percentage figures offered for advertising and traffic and shipment expenses. Böwe has simply posited, with no further explanation, a LOT adjustment equal to 52 percent of its OE & C expenses. We have no information as to how Böwe calculated this figure, nor has Böwe provided any analysis or worksheets to demonstrate how it arrived at its estimate. It is incumbent upon Böwe to substantiate this claimed adjustment and, in the case of a LOT adjustment, to the claimed adjustment to differences arising from different levels of trade, rather than to other factors. Instead, "Böwe has provided no evidence on the record, either in the form of worksheets or narrative explanation, to substantiate this claim or to explain how it arrived at this 52 percent figure." *Böwe III* at 237, quoting Second Remand at 20. Further, the Department recognizes, as did the Court in *Timken Co. v. United States,* 930 F.Supp. 621 (CIT 1996), the distinction between a respondent's use of methodologies which allocate expenses to different levels of trade and a respondent's actually incurring the expenses differently due to selling to each level of trade. That Böwe was able to devise an allocation methodology which purports to capture the appropriate LOT adjustment for OE & C (as for the other expenses discussed in *Böwe III* ) does not indicate, *ipso facto,* that Böwe incurred the expenses differently at different levels of trade. or that the allocation methodology accurately reflects these levels of trade.

As Böwe has provided no evidence (aside from unsupported assertions) indicating what portion, if any, of OE & C expenses are attributable to the fact that Böwe's home market sales were to end users rather than distributors, the Department has no basis for determining the amount of an appropriate LOT adjustment for these expenses.

As in the Second Remand, the Department concludes that, with respect to OE & C expenses. Böwe has substantiated neither its claim that a LOT adjustment is warranted, nor its quantification of such an adjustment. Further, Böwe has not demonstrated that the claimed price differential is wholly or partly attributable to differences in levels of trade. *See* 19 CFR § 353.56(a)(1). After thoroughly analyzing the information supplied by Böwe, we must conclude that Böwe has failed to establish that it is the claimed difference in levels of trade which has affected price comparability between Böwe's U.S. and home market sales. We conclude, for the reasons reiterated above, that Böwe's claims do not provide the Department with a reliable basis for calculating a LOT adjustment to FMV. The information supplied by Böwe regarding its OE & C expenses, including the Compendium and the Remand Comments, is both inconsistent in explaining the differences between levels of trade, and incomplete as to quantifying the proposed LOT adjustment. Therefore, the Department is not making a LOT adjustment for Böwe's OE & C expenses in this redetermination.

Remand III at 6–13 (footnotes omitted) (emphasis in original).

## DISCUSSION

 Commerce exercises broad discretion in granting or denying a level of trade adjustment. *Böwe III,* 951 F.Supp. at 233. The breadth of this discretion emanates from Commerce's expertise in administering a complicated statutory scheme. *See Smith–Corona Group v. United States,* 1 Fed. Cir (T) 130, 131–32, 713 F.2d 1568, 1571 (1983). As broad as this discretion may be, it is not unlimited. *Böwe III,* 951 F.Supp. at 233. If a party submits evidence to establish a level of trade adjustment, (*e.g.,* the cost data[4] submitted in this case), and Commerce concludes *in a general fashion* that the eviden-

---

**4.** "To establish the link between differences in level of trade and differences in price, an econometric analysis need not necessarily be performed. *See Daewoo Elec. Co. v. International Union,* 6 F.3d 1511, 1517 (Fed.Cir.1993). Use of cost criteria to satisfy the quantum of evidence required to establish entitlement to an adjust-

ment is permissible. *See Smith–Corona Group v. United States,* 713 F.2d 1568, 1577 n. 26 (Fed. Cir.1983). Absent evidence that costs do not reflect value, *id.,* Commerce may presume that costs are passed on to consumers. *See Am. Alloys Inc. v. United States,* 30 F.3d 1469, 1475 (1994). Commerce, however, 'is not required to

tiary burden has not been met—*i.e.*, the party has not demonstrated to the "satisfaction of the Secretary" that the claimed level of trade adjustment was limited to price differences which are attributable to the different levels of trade—the Court cannot *meaningfully* review Commerce's denial of the adjustment. To enable meaningful judicial review, Commerce must offer a reasoned explanation for its denial of the claimed adjustment.

■ In this case, Böwe submitted a "Compendium" of data that included, *inter alia*, a comparison of labor hours devoted to certain tasks for home market and export sales. The data indicated that workers expended more labor hours for home market sales than for export sales. Böwe argued that this data documented higher costs which were associated with the home market, and that these higher costs (attributable to the end user level of trade) were reflected in price. It sought an adjustment to account for this difference.

In reviewing Remand I and II the Court, inquiring what else Böwe could have done to substantiate its request, concluded Commerce was imposing an unreasonable burden of proof in denying the adjustment. In Remand II Commerce did not sufficiently articulate the inadequacies of Böwe's order entry and control data. In Remand III, quoted above, Commerce has sufficiently articulated the inadequacies of the data and the Court will sustain Commerce's denial of Böwe's order entry and control expense level of trade adjustment.

In elaborating its denial of the adjustment, Commerce indicated, (with specific references to the record supporting its conclusion), the following deficiencies in Böwe's evidence: it did not sufficiently identify differing levels of trade in export markets; it did not sufficiently discount the impact of other factors (operating independently of levels of trade) that might account for the price differential; it did not sufficiently detail by worksheets and narrative explanation the costs associated with sales to distributors in the United States and other markets (to prove that certain expenses were not in-

assume such a causal relationship.' *Mantex Inc. v. United States*, 841 F.Supp. 1290, 1302 (1993)."

curred for those sales); and it did not provide the analysis and worksheets for Böwe's claimed percentage adjustment.

Here the Court needed a reasoned explanation for rejection of the claimed adjustment. Commerce provided a reasoned explanation with its "gaps and inconsistencies" rationale. This rationale, in turn, enabled the Court to conduct a meaningful review by assessing whether the record supported Commerce's conclusion.

The record supports Commerce's refusal to make a level of trade adjustment for Böwe's order entry and control expenses. Commerce's determination is not unreasonable and is supported by substantial evidence. Judgment will be entered accordingly.

## *JUDGMENT*

ORDERED, ADJUDGED, AND DECREED that the determination on remand of the Department of Commerce is sustained in its entirety.

*Böwe III*, 951 F.Supp. at 233–234.