JEROME MIRZA & ASSOCIATES, LTD., an Illinois corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 86–3182.

United States District Court, C.D. Illinois, Springfield Division.

Aug. 12, 1988.

Dean B. Rhoads, Sutkowski & Washkuhn Assoc., Peoria, Ill., for plaintiff.

John A. Mehlick, Asst. U.S. Atty., Springfield, Ill., Jeffrey N. Kaplan, U.S. Dept. of Justice, Washington, D.C., for defendant.

OPINION

RICHARD MILLS, District Judge:

In my own case the words of such an act as the Income Tax ... merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception—couched in abstract terms that offer no handle to seize

hold of—leave in my mind only a confused sense of some vitally important, but successfully concealed purport, which it is my duty to extract, but which is within my power, if at all, only after the most inordinate expenditure of time. I know that these monsters are the result of fabulous industry and ingenuity, plugging up this hole and casting out that net, against all possible evasion … that they were no doubt written with a passion of rationality; but that one cannot help wondering whether to the reader they have any significance save that the words are strung together with syntactical correctness.

L. Hand, *The Spirit of Liberty: Papers & Addresses of Learned Hand*, 213 (I. Dilliard ed. 1960).

A tax case of first impression.

At issue:

(1) Whether 26 U.S.C. § 404(a)(1)(A)(iii) required the taxpayer/professional corporation to allocate between current and past service costs the benefits accruing to its sole shareholder in 1980 under a defined benefit pension plan?

(2) Whether the actuarial assumptions the taxpayer/professional corporation utilized in 1980 for the defined benefit pension plan, principally the pre-retirement 5% interest rate assumption, were reasonable in the aggregate as required by 26 U.S.C. § 412(c)(3)?

The answers:

(1) Yes

(2) No

## BACKGROUND

The taxpayer, Jerome Mirza & Associates, Ltd., is a professional corporation in the business of providing legal services and is controlled by its sole shareholder, Jerome Mirza. On December 31, 1980, the taxpayer adopted the "Jerome Mirza & Associates, Ltd., Defined Benefit Pension Plan" with an effective date of January 1, 1980.

Article I, § A of the Plan states that the taxpayer desired to create a scheme of deferred compensation consistent with § 401 of the Internal Revenue Code, and all provisions should be construed so as to comply with the tax code's requirements for qualification. The plan provides, *inter alia*, that an employee is eligible to participate after three years of service but may accrue benefits only after completing a fourth year of service. Eligible individuals then receive an accrued benefit equal to 30% of the participant's compensation for the first year of participation on or after January 1, 1980, plus 5% of his or her salary for each of the next three years, reduced by 37% of social security benefits ratably earned over the initial four years of plan participation. Each participant is entitled to his or her accrued benefit upon reaching the retirement age of 55 and attaining 10 years of plan participation. The plan also provides that the normal retirement benefit may not exceed the lesser of $110,625 per year or 100% of the participant's total annual income averaged over the high consecutive three years of participation.

The plan covered two employees in 1980. Jerome Mirza had been employed by the taxpayer for seven years and was 43 years old. David Dorris had been employed for five years and was 33 years old. During 1980, Mr. Mirza's compensation totalled $275,000. Mr. Dorris' income was $27,000 of which he elected $9,760 to be considered for pension purposes. Based upon the plan's provisions, the annual accrued benefit was calculated as $80,927 and $1,215 for Mr. Mirza and Mr. Dorris respectively. In other words, upon their retirement at the plan retirement age of 55, Mr. Mirza and Mr. Dorris would receive those respective sums each year even if no benefits accrued in later years.

To fund enough money to pay the yearly benefits, the plan's actuary, The Wyatt Company, then prepared an actuarial valuation report for the plan using the unit credit cost method. The actuarial assumption for the 1980 valuation included an interest rate of 5% for the pre-retirement period. This assumption was the actuary's estimate of the rate the plan would earn on

its investments. Because of existing circumstances, mortality, turnover and salary increase assumptions were unnecessary. Employing the actuarial assumptions, the actuary determined the present value of Mr. Mirza's accrued benefit to be $619,925 and Mr. Dorris' to be $6,000. The total of $625,925 was reported as the normal cost for the year. The unfunded past service liability was recorded as zero for the December 31, 1980, valuation.

The taxpayer's 1980 tax return reported a deduction of $625,925 attributable to the pension plan. The amounts contributed in the plan year and how they were invested are as follows:

| Date | Amount | Investment |
|---|---|---|
| 9/15/80 | $100,000 | 6 month CD@11.65% |
| 9/15/80 | $200,000 | 36 month CD@12.4% |
| 1/5/81 | $100,000 | 6 month CD@15.5% |
| 1/8/81 | $100,000 | 6 month CD@15.5% |
| 3/3/81 | $100,000 | 6 month CD@15.75% |
| 3/3/81 | $ 18,007 | 6 month CD@13.861% |
| | $618,007 | |
| + 3,206 | — | accrued interest on funds invested prior to 12/31/80 |
| + 4,712 | — | full funding limitation credit |

Tax deduction = $625,925

The corporation's 1980 tax return reported income of $79,038 before the deduction. Following the pension plan deduction, the return reported a loss of $546,887.

Pursuant to 26 U.S.C. § 172, the taxpayer carried back the loss and offset it against income earned in 1977, 1978, and 1979. The carryback generated investment credit for 1974 and 1975 as well. The taxpayer requested and received federal income tax refunds totalling $235,731.

The Internal Revenue Service subsequently audited the corporation's 1980 tax return. Asserting that the 5% interest rate assumption was unreasonable, the IRS first reduced the present value of the accrued pension benefit for 1980 from $625,925 to $442,010 based upon an 8% interest rate assumption. The Service next allocated $63,758.74 of the benefits to normal cost and $378,251 to past service costs. Although the Service agreed that the "normal cost" was currently deductible, it found the tax code required past service costs to be amortized over ten years. Only the amount sufficient to fund a level amortization over ten years was currently deductible. The IRS thus computed the tax deduction to be $115,953.71 (normal cost of $63,758.74 plus past service costs of $52,194.97).

The reduction in the amount of the pension plan's deduction from $625,935 to $115,954 generated a tax increase for the corporation in the amount of $227,415. The taxpayer paid the assessment plus interest of $173,950, and thereafter filed a refund claim which the IRS disallowed.

On June 5, 1986, the taxpayer filed this suit requesting a refund of taxes paid. The Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

## ISSUES

A taxpayer seeking a refund under 28 U.S.C. § 1346(a)(1) "bears the burden of proving that the assessment was incorrect and proving the correct amount of the tax owed." *Phil Smidt & Son, Inc. v. National Labor Relations Bd.*, 810 F.2d 638, 642 n. 6 (7th Cir.1987), *quoting, Ray v. United States*, 762 F.2d 1361, 1362 (9th Cir.1985). *Accord 672 Corp. v. United States*, 461 F.Supp. 445, 447 (N.D.Ill.1978). The provisions of the Internal Revenue Code which allow for tax deductions are a matter of legislative grace. Such deductions are permitted only to the extent provided by statute. *New Colonial Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1933). As the Court stated in *White v. United States*, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172 (1938): "[A] taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."

In this instance, the question of whether the Code required an allocation between current and past service costs in 1980 rests purely upon statutory interpretation and may be decided as a matter of law. That issue is the subject of cross-motions for summary judgment under Fed.R.Civ.P. 56. In contrast, whether the actuarial assumptions used to fund the plan were reasonable in the aggregate is a question of fact, the resolution of which must under Fed.R.Civ.

P.· 52 turn on the evidence adduced at the bench trial heard November 19 and 20, 1987. *See Owensby & Kritikos, Inc. v. Commissioner of Internal Revenue*, 819 F.2d 1315, 1323 (5th Cir.1987) (question of reasonableness is for the fact-finder). Each issue is discussed *seriatim.*

*Issue I*

■ Deductions for contributions to pension plans are controlled principally by 26 U.S.C. § 404. In 1980, subsection (a)(1)(A)(iii) placed the following limitation on the amount deductible:

[A]n amount equal to the normal cost of the plan, as determined under regulations prescribed by the Secretary, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount necessary to amortize such credits in equal annual payments (until fully amortized) over 10 years, as determined under regulations prescribed by the Secretary.

Consistent with the language of the statute, the regulations require that pension plans make a reasonable allocation between past and current service. Treas.Reg. § 1.412(c)(3)–1e(3) states the general rule: "In determining a plan's normal cost and accrued liability for a particular plan year, the projected benefits of the plan must be allocated between past years and future years." Further, that section provides the allocation between past and future service in a career average pay plan must be reasonable. Because the Plaintiff's plan provides benefits based upon pay in certain plan years, it is a career average type plan and must therefore comply with the command of § 1.412(c)(3)–1(e)(3).

The taxpayer correctly points out that § 1.412(c)(3)–1 applies only to plan valuations after April 30, 1981. Treas.Reg. § 1.412(c)(3)–2(b)(1). But the corporation's argument that the regulation lends no guidance whatsoever is simply wrong. Treas.Reg. § 1.412(c)(3)–2(b)(3) provides:

The reasonableness of a funding method used in making a valuation of a plan's liability as of a date before the effective date determined under subparagraph (1)

or (2) of this paragraph is determined on the basis of such published guidance as was available on the date as of which the valuation was made.

Certainly, clear "published guidance" on which the Plaintiff should have relied was available prior to the plan's 1980 valuation. Rev.Rul. 59–67, for instance, required that an employer's contribution under a qualified pension plan made on account of service rendered prior to the year of contribution be considered under 26 U.S.C. § 404 as amounts paid to fund the cost of past service credits, despite the fact that the contribution was allocated among participants on the basis of current compensation. Similarly, Treas.Reg. §§ 1.404(a)–6(a)(2) & (3), in effect at the time of the valuation, refer to the necessary allocation of an accrued benefit under a defined pension plan between current and past service if the benefit was earned due to performance of past services.

The plan's actuary obtained an explanation of the published guidance over a year prior to the valuation date. The actuary requested the IRS to clarify the tax consequences of using the unit credit cost method for funding pension plans which provided front-loaded benefit accruals. The Service responded:

Under the unit credit method, the allocation of costs between those costs going toward normal costs (current service) and those costs going toward past service liability (past service costs) must be reasonable. Generally, costs will not be considered to be current service costs if the benefits accruing in the current year can accrue in that year only if the participant has adequate past service.

In defending its position, the Government relies heavily on 26 U.S.C. § 415. Subsection 415(b)(5) in 1980 provided that the benefits of a participant in a pension plan who has less than ten years of service with the employer cannot exceed the lesser of $110,625 or 100% of the participant's average compensation for his high three years, times the number of years of service divided by ten. Thus, if Jerome Mirza had not had seven years of prior service, § 415

would have placed a limitation of $11,062 ($110,625 times 1/10th) on his accrued benefit if the plan were to remain qualified.

Jerome Mirza's ability to accrue a benefit of $80,927 in this case is due solely to his seven years of prior service for his corporation. The § 415 limitation is computed including the seven years of prior service as $110,625 times 8/10ths or $88,500. Since Mr. Mirza needs past service to accrue a benefit in excess of $11,062, the taxpayer's allocation of the entire deduction to normal cost under 26 U.S.C. § 404(a)(1)(A)(iii) is unreasonable and cannot be sustained. *See* Rev.Rul. 85–131 (allocation of liabilities under the unit credit or accrued benefit method to past and future service must account for the requirements of § 415; otherwise, it is not a reasonable funding method). Interpreting the terms of the plan in accordance with the stated desire that it be construed as qualified, requires an allocation to be made between current and past service costs.

The taxpayer asserts that only in 1986 did Congress amend § 415 and close the loophole of which it seeks to take advantage. *Au contraire.* Under the 1986 amendment, subsection (b)(5) limits the accrual of benefits under a qualified plan to 10% of the accrued benefit for each year of participation in the plan. Since the limitation is now based on years of participation, rather than years of service, a plan can no longer utilize service previous to participation to accrue additional benefits. But this is not to say that the former § 415—which permitted Mr. Mirza to accrue benefits of over $80,000 in his first year of participation—allowed the taxpayer to allocate the entire amount to the plan's normal cost and deduct its present value on the employer's 1980 tax return. The issue here is not the amount of the accrued benefit, but the proper allocation between current and past service costs. Jerome Mirza utilized seven years of prior service to accrue his full benefit. The Internal Revenue Service does not attempt to limit that amount, but instead requires the plan to reasonably allocate the benefit between past and present service.

In this Court's view, the amendment to § 415(b)(5) did not close a loophole, but rather modified and clarified the law so as to insure proper compliance. To conclude that the tax code let the taxpayer in this instance deduct the entire cost of the plan in a single year would be to reject both the language of § 404, and the treasury regulations and revenue rulings previously discussed.

*Issue II*

■ The question of whether the actuary engaged in reasonable assumptions to determine the level of funding necessary to provide the plan's projected benefits is governed by 26 U.S.C. § 412(c)(3):

*Actuarial assumptions must be reasonable.*—For purposes of this section, all costs, liabilities, rates of interest, and other factors under the plan shall be determined on the basis of actuarial assumptions and methods which, in the aggregate, are reasonable (taking into the account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan.

Section 404(a)(1)(A) directs that the amount deductible in any year shall be figured under the assumptions used for § 412. *See* Treas.Reg. § 1.404(a)–3(b). The reasonableness of the plan's actuarial assumptions largely depends upon two factors: (1) the experience of the plan, and (2) the reasonable expectations of future plan performance.

Because the plan was formed in 1980, no plan experience existed before January 1, 1980. Contributions for that year were invested in short-term certificates yielding 11.65%, 12.4%, 15.5%, 15.75%, and 13.86%. The initial contributions of $200,000 invested in a three-year certificate of deposit at 12.4% and $100,000 invested in a six-month certificate of deposit at 11.65% took place prior to the December 31, 1980, valuation date. Thus, some plan investment experience was present.

This experience is significant for two reasons. First, it illustrates the type of investment the plan would make—very con-

servative with a high income yield. Oddly enough, the Plaintiff declined to provide the Court with an exhibit projecting CD rates despite its apparent preference for such an investment. Second, the experience indicates the current yields received at the time—between 11% and 15%. The plan investments indicated a much higher return than the 5% assumed by the actuary.

Nor is the 5% assumption a reasonable expectation of the plan's future performance. Accepting Mr. Mirza's age as 43 in 1980 and the actuary's determination of normal retirement age as 55, the investment period for the plan is 12 years. Since the corporation will likely dissolve upon its sole shareholder's retirement and the plan will no longer actively invest, forecasting rates further into the future is unnecessary. According to the evidence proffered at trial, the Treasury Bond rates for the weeks ending December 26, 1980, and January 2, 1981, were as follows:

| Week | Ten Year | Twenty Year |
| --- | --- | --- |
| 12–26–80 | 12.29% | 11.99% |
| 1–2–81 | 12.36% | 12.05% |

Consequently, the plan could have invested in 10–year Treasury Bonds and been *guaranteed* a return of over 12% for more than 4/5ths of the pre-retirement investment period. As the Government aptly states: "For individuals who can afford to buy Treasury Bonds, the only reason a prudent investor would not buy them would be due to the belief that they could get a higher yield with other investments!"

Furthermore, under the terms of the plan, 73% of the benefits accrued in the first year, with the remaining 27% accruing over the next three. Given this front-loading of benefits and the short 12–year investment period, one could reasonably expect that the entire cost of the plan could be invested at interest rates well in excess of Plaintiff's 5% "passbook" rate. As shown, a 12% return on 73% of the cost was certain.

The taxpayer's attempt to cloud over the structure of the plan and the 1980 investment outlook must fail. Its reference to 12–year weighted averages of common stock and fixed income funds is misplaced.

Not only does the plan's experience indicate that investments in such funds is unlikely, but also the use of the weighted averages is misleading since virtually all of the investments would be made during the initial four years of the plan. Therefore, the taxpayer's use of the 5% assumption is unreasonable.

Admittedly, some plans may balance a conservative interest rate assumption with turnover, compensation or mortality assumptions. But here, no compensating assumptions are present and no adjustment to the rate assumption may be made. In view of the unique features of the taxpayer's plan, reference to other plans is not helpful.

## CONCLUSION

Throughout this lawsuit, the taxpayer has asserted that private parties—not the Government—control the level of benefits under a qualified pension plan. But the United States does not attempt to limit the benefits which have accrued to the corporation's employees. Rather, it seeks only a proper determination of *what* the costs of those benefits are and *when* they can be deducted under § 404 of the tax code.

Consistent with the foregoing opinion, the Court concludes that the Internal Revenue Service's computation of the allowable deduction to the professional corporation for the costs of the Jerome Mirza & Associates, Ltd., Defined Benefit Pension Plan was proper.

Judgment for the Defendant.

Cause DISMISSED.

Case CLOSED.