**SLIP OP. 99-49**
**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| _____ | : | |
| SANYO ELECTRIC CO., LTD. and | : | |
| SANYO ELECTRIC INC., | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | **BEFORE: Wallach, Judge** |
| v. | : | **Court No.: 87-04-00620** |
|  | : | |
| THE UNITED STATES, | : | |
|  | : | |
| Defendant. | : | |
| _____ | : | |

[Final results of Commerce's redetermination sustained.]

Decided: June 4, 1999

Sharretts, Paley, Carter & Blauvelt, P.C. (Gail T. Cumins and Ned H. Marshak) for Plaintiffs.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, and Melanie A. Frank, Of Counsel, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

**OPINION**

**I.**

**INTRODUCTION**

On April 6, 1998, this Court in Sanyo Electric Co. v. United States, 9 F. Supp. 2d 688 (1998) (hereinafter "Sanyo I"), remanded to the Department of Commerce, International Trade Administration (hereinafter "Commerce" or "ITA"), several issues arising from the final results of the fourth administrative review entitled Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review, 52 Fed. Reg. 8940 (1987)

(hereinafter "Final Results").[1]   Specifically, the Court directed Commerce to reconsider 1) the determination of statutory foreign market value (hereinafter "FMV"); 2) Sanyo's level of trade adjustment; 3) the calculation of home market advertising expenses; and 4) the treatment of the commodity tax.

On August 14, 1998, Commerce released draft remand results (hereinafter "Draft Redetermination") and invited interested parties to comment.  After receiving comments (hereinafter "Draft Comments") from Plaintiffs, Sanyo Electric Co., Ltd., and Sanyo Electric Inc. (hereinafter "Sanyo") on September 4, 1998, Commerce filed its Final Results of Redetermination Pursuant to Court Remand (1998) (hereinafter "Final Redetermination").

The Court has jurisdiction over these issues pursuant to 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581 (1988).[2]

## II.

## BACKGROUND

The complete factual background to this case is described in Sanyo I and familiarity with the prior case is presumed.  Therefore, only facts relevant to the disposition of the case at bar will be discussed.

---

[1]      The Final Results cover the Third and Fourth Administrative Review Periods, but only the actions in the Fourth Review are at issue.

[2]      This case is governed by the law before passage of the Uruguay Round Agreements Act since the petition was filed prior to January 1, 1995.

In Sanyo I the Court reviewed challenges to Commerce's investigation of television receivers, monochrome and color  from Japan.  See Final Results. The Court remanded to Commerce instructions to, *inter alia*,[3] recalculate FMV[4] based on the price paid to Sanyo from its distributors or to provide a rationale for calculating FMV based on the distributors' resale price to unrelated dealers and to reconsider the level of trade adjustment in conjunction with the foregoing.  Sanyo, 9 F. Supp. 2d at 698.

In the first three Periods of Review (hereinafter "POR"), Commerce calculated FMV on the basis of prices paid to Sanyo by both related and unrelated distributors having determined that the price paid by Sanyo's related distributors was made at arm's length.  Commerce concluded the transactions were made at arm's length even though the number of sales to unrelated distributors was insubstantial.[5]   In the Fourth POR although sales made to unrelated distributors were similarly insubstantial, Commerce found that:

---

[3]      In addition, the Court ordered Commerce to recalculate the amount of home market advertising expenses under the product-line methodology using the figures originally submitted by Sanyo and to increase the United States Price ("USP") by the amount of any commodity tax paid by Sanyo.   The Court upheld Commerce's refusal to adjust FMV to reflect home market warranty labor costs.  Sanyo, 9 F. Supp. 2d at 698.

[4]      Pursuant to 19 U.S.C. § 1673 (1988), Commerce is required to impose antidumping duties "in an amount equal to the amount by which [FMV] exceeds the United States price for the merchandise."  FMV is ordinarily the price at which the exporter sells the subject merchandise in its home market or to third countries other than the United States.  19 U.S.C. § 1677b(a)(1) (1988).

[5]      "In the first, second and third reviews, the volume of subject merchandise sold to unrelated parties were [sic] [two], [one], and [ten] units, respectively."  Final Redetermination at 7.

> [o]f all sales to distributors in the fourth period, Sanyo had only one sale of one unit to an unrelated distributor at a price equal to its prices to related distributors. That sale was less than one percent of all such sales.  We do not consider this sufficient to determine that sales to related distributors were made at arm's length and, accordingly, we base FMV on sales made by the related distributors to unrelated dealers.

Final Results, 52 Fed. Reg. at 8943.  Although the government argued before the court in Sanyo I that Commerce's arm's length determination was made in conformity with Commerce's general practice, the government conceded that a remand was required so that Commerce could try to explain the inconsistent methodology applied between the first three PORs and the Fourth POR.

In the Final Redetermination, Commerce maintained that Sanyo's FMV calculation should be based on the distributors' prices to dealers and Sanyo, here, challenges Commerce's redetermination on that basis.  Id.  Accordingly, Sanyo seeks an order directing Commerce to recalculate FMV based on prices paid to its related distributors.  In the alternative, should the Court affirm Commerce's calculation of FMV, Sanyo requests an order requiring Commerce to grant Sanyo's claimed level of trade adjustment.

## III.

## DISCUSSION

## A.

The Standard Of Review For ITA Remand Redeterminations Requires
Affirmation Unless A Redetermination is Unsupported By
Substantial Record Evidence Or Otherwise Not In Accordance With Law.


"The court shall hold unlawful any determination, finding, or conclusion found . . . to be

unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19

U.S.C. § 1516a(b)(1) (1988).  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. N.L.R.B.,

305 U.S. 197, 229 (1938).


## B.

Commerce's Decision To Use Prices Paid By Sanyo's Distributors
to Dealers To Calculate FMV Is Supported By Substantial Evidence
And In Accordance With Law.


In Sanyo I, the Court ordered Commerce to calculate FMV based on the price paid to

Sanyo from its distributors or provide a rationale for calculating FMV based on the distributors

resale price to dealers.  The latter calculation was a departure from the methodology used in the

prior three administrative reviews.  In the Final Redetermination, Commerce maintained its

decision to base FMV on the distributors resale price to dealers.  Final Redetermination at 7.

The ITA explained that its practice has been developed to reject "unrelated/unaffiliated sales if

they are not commercially significant and therefore are insufficient to provide a meaningful

comparison to related/affiliated party sales."  Id. at 6.

Although Commerce conceded that the calculation represented a change in methodology,[6]

it explained that its new approach "is intended to prevent the manipulation of sales transactions

to the respondent's advantage and to prevent the fabrication of sales."  Id. at 5-6. Accordingly,

for the Fourth POR, Commerce determined that Sanyo's "single unrelated party sale of one unit

which represented less than 1 percent of home market sales was not commercially significant and

therefore was too small to provide a meaningful comparison to related party sales.  Consequently,

[Commerce] did not use Sanyo's single unrelated sale in the fourth review."  Id. at 7.


Sanyo argues that Commerce's methodology is unsupported by substantial evidence and

not in accordance with law and therefore, Commerce's decision requires reversal.  Specifically,

Sanyo argues that Commerce may not ignore relevant evidence of sales to unrelated distributors

occurring prior to the Fourth POR.  Sanyo also asserts that the "intertwining" of sales

information for the Third and Fourth POR requires consideration of Third POR sales data.

Finally, Sanyo claims that Commerce's determination to use a different methodology for

calculating FMV in the Fourth POR placed a legally impossible burden on it as well as created an

impermissible retroactive policy contrary to law.   The Court will address each argument

*seriatim*.

---

[6]        Final Redetermination at 8 ("[I]t is based on the Department's changed practice
developed (but not articulated clearly) between the second and fourth reviews.").

**1.**

Commerce's Decision Not to Consider Third POR Sales
To Calculate FMV for the Fourth POR is Supported
by Substantial Evidence and In Accordance With Law.

In the Final Redetermination, Commerce concluded that "Sanyo's reliance on sales data submitted for the third administrative review is not relevant to any demonstration of the arm's length nature of sales in the fourth administrative review." Final Redetermination at 15-16.  For support, Commerce cites to Certain Welded Carbon Steel Pipe and Tube Products from Turkey, 55 Fed. Reg. 42230 (1990) for the proposition that "a respondent may not rely on data submitted in prior reviews to support a claimed adjustment in a current review." Final Redeterminations at 15.  Consequently, Commerce refused to consider Sanyo's Third POR sales to unrelated distributors in calculating the number of unrelated sales required to fulfill the arm's length test in the Fourth POR.

Sanyo argues that Commerce erred by rejecting Third POR sales to unrelated distributors in its arm's length test.  Specifically, Sanyo contends that the "PORs constitute arbitrary periods of time, unrelated to commercial dealings, selected because of the happenstance that an AD Order[7] is published in a particular month."  Comments of Sanyo Electric Co., Ltd and Sanyo Electric Inc. in Response to Redetermination Pursuant To Court Order In Slip Op. 98-41 at 8 ("Sanyo's Comments").  As a consequence, Sanyo's sale of 10 units to unrelated distributors made during the Third POR was sufficient to pass the arm's length test, while Sanyo's sale of 1 unit to an unrelated distributor during the Fourth POR resulted in Commerce's rejection of that

---

[7]     Antidumping Duty Order.

sale for its arm's length test.   Id. at 7 (citing Final Redetermination at 7) (Commerce "rejected

the identical prices and the identical pricing practices as being 'commercially insignificant.'").

Sanyo concludes that "the fact that the majority of Sanyo's sales to unrelated distributors had

taken place prior to [Commerce's] Fourth POR does not detract from their relevance to

[Commerce's] determination," id. at 7-8, and, therefore, Commerce acted contrary to law by

ignoring relevant information.[8]

In addition, Sanyo argues that Commerce's conclusion that "there was no intertwining of

the sales information for determinations made for each relevant review period," id. at 10, is in

error.  In fact, argues Sanyo, "clear and uncontradicted evidence of such 'intertwining' is found

in the following documents[:]"

> 1. Commerce Notice of Initiation of the Annual Review stating that POR covers
> 04/01/81-13/31/83. 50 Fed. Reg. 48825, 48826 (1985);
>
> 2. Commerce Preliminary Determination stating that the review covers generally
> the period April 1, 1981 through March 31, 1983.  51 Fed. Reg. 40474 (1986);
>
> 3. Commerce Final Determination stating that the review covers generally the
> period April 1, 1981 through March 31, 1983. 52 Fed. Reg. 8940 (1987).
>
> 4.  Various requests for information from Commerce and submissions from
> Sanyo.  Commerce Verification Outline of 6/27/86 attached as Exh. 2 to Sanyo's
> Comments; Sanyo's Request for Clarification of 7/7/86 attached as Exh. 3 to
> Sanyo's Comments; DOC Verification Report of 8/14/86 attached as Exh. 12 to
> Prehearing Brief on Behalf of Sanyo Electric Co. and Sanyo Electric Inc. of
> 11/26/86.

Sanyo's Comments at 10-11.

---

[8]       By way of illustration, Sanyo demonstrates that "during an 18-month period,
encompassing the last six months of the Third POR (Oct. 1, 1981-March 31, 1982) and the entire
Fourth POR, Sanyo's sales price did not change, as Sanyo sold 8 units to unrelated distributors at
the identical price at which it sold 105 units to related distributors." Sanyo's Comments at 3.

Despite those arguments, the Court finds that Commerce's decision not to consider Third POR sales for purposes of conducting the arm's length test used in the Fourth POR is supported by substantial evidence and in accordance with law.


General principles of administrative law provide that "'[r]eview of agency determinations in antidumping proceedings is to be undertaken upon the basis of the record made before the agency.'" Win-Tex Products, Inc. v. United States, 16 CIT 760, 763, 797 F. Supp. 1025, 1027 (1992) (quoting Nakajima All Co., Ltd. v. United States, 2 CIT 25, 26 (1981)). 19 U.S.C. § 1516a(b)(2)(A)(I) (1988) defines the administrative record as consisting of "all information presented to or obtained by" the ITA "during the course of the administrative proceeding" under review. The legislative history states:

> Scope and standard of Review.–Judicial review of determinations subject to the provisions of subsection (a)(1) would proceed upon the basis of information before the relevant decision-maker at the time the decision was rendered including any information that has been compiled as part of the formal record.

S. Rep. No. 96-249 at 247-48 (1979), reprinted in 1979 U.S.C.C.A.N. 381, 633. "It therefore appears that Congress intended to limit the scope of the record for review to those matters considered in the particular determination challenged." Cabot Corp. v. United States, 11 CIT 447, 449, 664 F. Supp. 525, 526 (1987); see also Neuweg Fertigung GmbH v. United States, 16 CIT 724, 726, 797 F. Supp. 1020, 1022 (1992) (quoting Beker Indus. Corp. v. United States, 7 CIT 313, 316 (1984)) ("The case law of this court is very clear that the administrative record 'is limited to the information that was presented to or obtained by the agency making the determination during the particular review proceeding for which section 1516 authorizes judicial review.'").

The record, however, is not limited solely to those documents submitted to the ITA.

Intrepid v. Int'l Trade Admin., 16 CIT 204, 205, 787 F. Supp. 227, 228 (1992).  The ITA may

obtain information from public documents "as long as it relates such information to the facts of

the case before it," IPSCO, Inc. v. United States, 12 CIT 1128, 1130, 701 F. Supp. 236, 238

(1988), aff'd in part and rev'd in part, 899 F.2d 1192 (Fed. Cir. 1990) (reversed in part and

remanded on other grounds), or the record may consist of "those documents at the agency which

become sufficiently intertwined with the relevant inquiry . . . no matter how or when they arrived

at the agency."  Floral Trade Council of Davis, Cal. v. United States. 13 CIT 242, 242-43, 709 F.

Supp. 229, 230 (1989) ("[T]he agency cannot ignore relevant information which is before it, and

the reviewing court must be in a position to determine if it had done so.") (citing Bethlehem Steel

Corp. v. United States, 5 CIT 236, 566 F. Supp. 346 (CIT 1983)).[9]


Sanyo first argues that Commerce must consider Third POR sales because "[Commerce]

cannot ignore otherwise relevant factual information, placed on the Administrative Record

during a particular arbitrary POR." Sanyo's Comments at 8.  On the contrary, as this Court has

stated before, "'[r]elevance and usefulness, alone . . . are not sufficient to render the information

appropriate for consideration by the Court in its deliberations.'"  Kerr-McGee Chemical Corp. v.

United States, 955 F. Supp. 1466, 1473 (CIT 1997) (quoting Suramerica de Aleaciones

---

[9]        Additionally, "[a] court will only consider matters outside of the administrative record when there has been a 'strong showing of bad faith or improper behavior on the part of the officials who made the determination' or when a party demonstrates that there is a 'reasonable basis to believe the administrative record is incomplete.'" F.Lli De Cecco Di Filippo Fara San Martino S.P.A. v. United States, 980 F. Supp. 485, 487 (CIT 1997) (quoting Saha Thai Steel Pipe Co v. United States, 11 CIT 257, 259, 261, 661 F. Supp. 1198, 1201-02 (1987).

Laminadas, C.A. v. United States, 14 CIT 366, 372 (1990)); cf. Nakajima All Co., 2 CIT at 25

(denying motion to supplement despite contention that information is newly determined to be

relevant).  Moreover, it is well established that "[t]he record for judicial review should ordinarily

not contain material from separate investigations," Bethlehem Steel Corp., 5 CIT at 236, 566 F.

Supp. at 347, including records of separate administrative reviews arising out of the same

antidumping duty order, as is the case here.  See  Rhone Poulenc, Inc. v. United States, 13 CIT

218, 222, 710 F. Supp. 341, 345 (1989), aff'd, 899 F.2d 1185 (Fed. Cir. 1990); Floral Trade

Council v. United States, 13 CIT at 243, 709 F. Supp. at 230 ("The court wholeheartedly

recognizes the law from earlier cases indicating that documents obtained for other investigations

do not automatically become part of the record of related investigations."); Cabot Corp., 11 CIT

447, 664 F. Supp. 525 (denying motion to augment record to include verification report from

different proceeding arising out of same order); Beker Indus. Corp. v United States, 7 CIT at 317.

Indeed, Sanyo cites no authority to support its contentions.


       In addition, Sanyo's argument regarding the arbitrariness of the dates set by Commerce to

establish its review periods is misplaced.  Sanyo's Comments at 8 ("[Commerce's] PORs

constitute arbitrary periods of time, unrelated to commercial dealings, selected because of the

happenstance that an AD Order is published in a particular month.").


       Commerce possesses the discretion to establish the period under review.  PPG Indus., Inc.

v. United States, 14 CIT 522, 532, 746 F. Supp. 119, 129 (1990).  While it is true that

Commerce's decision will be set aside if found arbitrary and capricious, the Court finds that the

time line established by Commerce in this case for the Fourth POR is not arbitrary.   On the

contrary, Commerce followed the regulatory guidelines established in 19 C.F.R. § 353.53a

(1987) which states that "an administrative review . . . normally will cover, as appropriate,

entries, exports, or sales of merchandise during the 12 months immediately preceding the most

recent anniversary month," or a one year period beginning with the anniversary month.[10]   "The

Commerce Department clearly cannot complete its work unless it is able at some point to 'freeze'

the record and make calculations and findings based on that fixed and certain body of

information."  Bowe-Passat v. United States, 17 CIT 335, 339 (1993).  While Sanyo feels that the

POR dates in this instance are arbitrary because only one sale to an unrelated distributor was used

in the arm's length test, date of filing based one year review periods are neither inherently

arbitrary nor unfair; they might equally work in favor of a party.


        Finally, Sanyo cites to several cases to rebut the proposition that "each POR stands alone,

and that evidence of events occurring in a prior POR cannot be relevant to an analysis of a

pending POR."  Sanyo's Comments at 8-9 (citing Sanyo, 9 F. Supp. 2d at 695 (remanding to

Commerce with instructions to use advertising expenses that fall outside POI); Independent

Radionic Workers of America v. United States, 862 F. Supp. 422, 429 (CIT 1994) (affirming

Commerce's decision to prorate advertising expenses that fell outside POI over sales made during

that period); AOC Int'l, Inc. v. United States, 721 F. Supp. 314, 319 (CIT 1994) (finding

Commerce's requirement that bad debt expenses be incurred and written off during POI not in

accordance with the law).  However, as noted by Defendant, see Defendant's Response to

---

        [10]     The date of the antidumping finding in this case is March 10, 1971.  See Final
Results of Television Receivers, Monochrome and Color, From Japan:, 36 Fed. Reg. 4597
(March 10, 1971).  The review periods lasted one year, from April 1st through March 31st.

Comments of Sanyo Electric Co., Ltd. and Sanyo Electric Inc. In Response To Redetermination

Pursuant To Court Order In Slip Op. 98-41, at 12 (hereinafter "Government's Response"), and as

the Court previously stated in Sanyo I, 9 F. Supp. 2d at 695, advertising expenses as well as bad

debt expenses are of a nature that prevents a sales-specific calculation.  For example,

circumstance of sale expenses such as advertising may be taken as expenses during one period of

review, but actually incurred during the next period.  In contrast, the number of sales made

within a period is a fixed and easily discernable number.

Sanyo's next argument is that the Third POR sales data was "intertwined" with Fourth

POR data.  The Court finds this argument insufficient to show Commerce erred.  The pivotal

case regarding Commerce's acceptance of intertwined data across successive periods of review is

Floral Trade Council.  In deciding a Motion To Enlarge The Agency Record, the Court found

that since the agency stated in its final results that it had examined "'the original investigations by

the ITC [International Trade Commission] and the Department,'" that these documents had

become sufficiently intertwined with the record.  Floral Trade Council, 13 CIT at 243, 709 F.

Supp. at 230.

In the case at bar, although Sanyo is correct in stating that Commerce requested sales data

for both the Third POR and Fourth POR simultaneously,[11] the evidence demonstrates that the

two groups of data were never "intertwined."  As stated by Commerce, "[b]oth the Federal

Register notices for the preliminary and final results clearly demonstrate that separate margins

_____

[11]     Sanyo cites to no authority, and this Court discerns no logic mandating a mere request for  POR information necessarily results in the intertwining of the two proceedings.

were calculated for Sanyo's sales in each of the two relevant 'periods under review.'" Final

Redetermination at 14.  Based on the evidence in the record, Commerce clearly addressed the

issue of related party sales for the Third POR exclusively in that review and, appropriately,

calculated the Third POR margin.  Final Results, 52 Fed. Reg. at 8947 (finding a 0% margin for

the Third POR).  Similarly, Commerce analyzed the unrelated sales for the Fourth POR to

determine that margin.  Id. (finding a 2.86% margin for the Fourth POR).  Accordingly, since

Commerce did not "expressly incorporate," see Floral Trade Council, 13 CIT at 243, 709 F.

Supp. at 230, sales data from the Third POR to calculate the Fourth POR margin, it properly

disregarded this information.  See Timken v. United States, 930 F. Supp. 621, 633-34 (CIT 1996)

(affirming Commerce's decision not to consider information from the 1991-92 review in the final

determination concerning the 1990-91 review as Commerce did not intertwine the two reviews.).

Clearly, "the decision [at issue] can be reviewed properly without [Third POR unrelated sales

data]."  Floral Trade Council, 13 CIT at 243, 709 F. Supp. at 230.


**2.**

Commerce's Arm's-Length Test Used In the Fourth Period Of Review
Is Supported By Substantial Evidence And In Accordance With Law.


        Well established principles of administrative law provide that an administrative agency

has the authority to change or revoke its policies and practices, if a reasonable explanation is

provided for such a change.  See Rust v. Sullivan, 500 U.S. 173, 186-187 (1991) ("An agency is

not required to 'establish rules of conduct to last forever' . . . but rather 'must be given ample

latitude to adapt its rules and policies to the demands of changing circumstances.'") (citations

omitted); NTN Bearing Corp. v. United States, 903 F. Supp. 62, 67 (CIT 1995).  A court's review

of an agency's change of position or practice will center on whether the action was arbitrary and capricious. Motor Vehicle Mfrs Assoc. v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 42-43 (1983).  "A change is arbitrary if the factual findings underlying the reason for change are not supported by substantial evidence.  Apart from factual findings, agency arbitrariness may also manifest itself in the particular reasoning offered by the agency; principally if the reasoning is inconsistent with the statutory mandate, or, to a lesser extent, if the reasoning (or lack thereof) violates general principles of administrative law . . . or offends standards of procedural fairness implied in the statute."  Asociacion Colombiana de Exportadores de Flores v. United States, 6 F. Supp. 2d 865, 880 n.20 (CIT 1998) (citations omitted).

In the case at bar, while Sanyo does not argue that Commerce's methodology is unreasonable *per se*, Sanyo asserts that in this particular case, "[Commerce's] failure to clearly articulate its policy and its change of position in midstream constitutes an impermissible 'predatory gotcha policy,' contrary to law."  Sanyo's Comments at 13.  As a consequence, Sanyo argues that since it had no reason to believe that [Commerce] would change its policy, Sanyo did not have the opportunity to submit additional documentation. Id.  Finally, Sanyo maintains that the documentation supplied by it to Commerce for the prior three reviews "should have been sufficient to shift the burden back to Commerce to determine that the Sanyo prices were not at arm's length."  Sanyo's Comments at 14.  To support this proposition, Sanyo cites, *inter alia*, Cinsa, S.A. v. United States, 966 F. Supp. 1230 (CIT 1997).

The government contends that Sanyo had an opportunity to submit additional information during the remand, and, therefore, Sanyo's failure to exhaust its administrative remedies requires

that the Court reject Sanyo's argument on this issue.  Government's Response at 15.

Additionally, the government distinguishes the facts in Cinsa, S.A. v. United States,  and

consequently argues that it is Sanyo that bears the burden of proving its transactions were at

arm's length.

The Court finds that the arm's length test used by Commerce in the Fourth POR is

supported by substantial evidence and in accordance with law.  The statute only provides that the

prices of sales to a related party "may be used in determining the foreign market value."  19

U.S.C. § 1677b(a)(3) (1988). Therefore, "under the applicable statute and regulation, Commerce

enjoys considerable discretion in deciding whether to include related party sales when calculating

FMV."  NTN Bearing Corp. v. United States, 19 CIT 1221, 1241, 905 F. Supp. 1083, 1100

(1995).  "This Court will uphold the test that Commerce selects to measure whether sales to

related parties were made at arm's length prices unless that test is shown to be unreasonable." Id.

at 1241;  NSK Ltd. v. United States, 969 F. Supp. 34, 55 (CIT 1997) ("To sustain Commerce's

choice of methodology, the Court must determine whether the methodology is reasonable, and

not whether it is the only reasonable one, or even the one that the Courts finds most

reasonable.").

The applicable regulations require a respondent to demonstrate "to the satisfaction of the

Secretary," that prices to related parties are "at prices comparable to those at which such or

similar merchandise is sold to persons unrelated to the seller."  19 C.F.R. § 353.22(b) (1988).

Therefore, the burden of proving that sales to related parties are at arm's length prices is on the

respondent.  NEC Home Elecs., Ltd. v. United States, 54 F.3d 736, 744 (Fed. Cir. 1995). In this

case, the methodology used by Commerce in the first three reviews simply compared the prices

of related and unrelated sales prices without regard to the number of unrelated sales to test for an

arm's length transaction.  Final Redetermination at 7, 12 ("While the Department permitted such

single sale tests in the prior administrative reviews of this order, the final results for the fourth

administrative review signaled a change in this practice").   In the Fourth POR, Commerce

changed its practice and determined:

> [I]n the absence of any indication that the unrelated sales are arranged solely to
> validate the price to related parties, the ITA is within its authority to use such
> sales as are commercially significant.  However, where the quantity of unrelated
> party sales is too small to be considered commercially significant, these sales
> cannot be considered to provide a meaningful comparison to related party sales,
> and therefore fail to provide a sufficient basis for the Department's comparability
> test, (i.e., of whether the sales to the related parties were made at arm's-length
> prices).  In such cases, we use the related parties sales (downstream sales) to the
> first unrelated party.
>
> The Department's requirement that the quantity of unrelated party sales be
> commercially significant so as to provide a meaningful basis for comparison to
> related party sales is intended to prevent the manipulation of sales transactions to
> the respondent's advantage and to prevent the fabrication of sales. Over time, it
> has been the Department's experience that to use a very small number of unrelated
> party sales in the arm's-length test would not produce reliable results.  In
> particular, the instance of a very small number of unrelated party sales poses
> problems of accuracy in representing the underlying price situation.  As we stated
> in the Final Results of the second review of this proceeding, '[t]he proper way to
> validate related party prices is to compare those prices to the prices of
> commercially significant sales to unrelated parties." See Television Receiving
> Sets, Monochrome and Color, From Japan; Final Results of Administrative
> Review of Antidumping Finding, 56 FR 24278( June 10, 1985).  Based on this,
> the Department has developed the practice of rejecting unrelated/unaffiliated sales
> if they are not commercially significant and therefore are insufficient to provide
> meaningful comparison to related/affiliated party sales.

Final Redetermination at 5-6 (citations omitted).  The Court finds that Commerce's new practice

of requiring a threshold minimum of unrelated party sales to determine whether related party

sales are at arm's length is in accordance with law.  In the case at bar, Commerce's principal

concern addressed the prevention of potential manipulation of sales transactions and fabrication

of sales.  Final Redetermination at 5-6.  Commerce's rationale that "a very small number of unrelated party sales in the arm's-length test would not produce reliable results" and "poses problems of accuracy in representing the underlying price situation" is reasonable.  Id. at 6.  This Court has previously found Commerce's methodology to be in accordance with law when the methodology was implemented to avoid potential manipulation by respondents.  See NSK Ltd., 969 F. Supp. at 55 (upholding change in methodology for reallocating U.S. selling expenses in fourth administrative review based on rationale that new methodology provides a value that is not subject to potential manipulation by parties despite fact that Commerce used different methodology in earlier reviews); cf. Bowe-Passat, 17 CIT at 340 ("In the end, the proper administration of dumping laws is best ensured by 'fair and accurate' determinations.")

Sanyo also cites Shikoku Chemicals Corp. v. United States for the proposition that Commerce abused its discretion and acted unreasonably by retroactively changing its arm's length test in the Fourth POR.[12]    Shikoku Chemicals Corp. v. United States, 16 CIT 382, 388 795 F. Supp. 417, 422 (1992) (finding that Commerce unreasonably altered a methodology that had been consistently used in the investigation and four previous administrative reviews, where Plaintiffs relied on the prior methodology, the fact pattern remained unchanged, and the error discovered in the methodology was of little significance).

The present case is, however, distinguishable from Shikoku.  In Shikoku, the Court emphasized the importance of evidence on the record that plaintiffs had adjusted their prices in

---

[12]     The other case cited to by Plaintiffs, Bowe-Passat, 17 CIT at 343, is not applicable because it involved the ITA's arbitrary rejection of untimely information.

accordance with the methodology Commerce had consistently applied in the investigation and

four previous reviews.  Id. at 386, 795 F. Supp. at 420 ("Shikoku's reliance interest is sufficient

to preclude Commerce from adopting the new method of calculating packing expenses.").  Here,

Sanyo has neither claimed nor presented any evidence of actual reliance upon Commerce's prior

methodology.[13]  See e.g., NTN Bearing Corp., 19 CIT at 1234-35,  905 F. Supp. at 1095 ("[T]his

case concerns only the third administrative review and [Plaintiffs] do not point to any record

evidence of detrimental reliance on Commerce's methodology in the investigation or in previous

reviews."); see also Asociacion Colombiana de Exportadores de Flores, 6 F. Supp. 2d at 879 n.19

(CIT 1998).[14]  Although Commerce's change in the Fourth review might be disturbing, its

methodology is, nevertheless, reasonable, and the Court must affirm Commerce's practice here.

In addition, Sanyo cites Cinsa, S.A., 966 F. Supp. at 1236-39,  for the proposition "that

once a respondent supplied the same information as had been accepted by [Commerce] in three

previous administrative reviews as to why transfer prices were at arms length, the burden shifted

to [Commerce] to establish that the transfer prices were not at arm's length."  Sanyo's Comments

at 14.  Thus, argues Sanyo, "[i]n the absence of a scintilla of evidence contradicting the

information submitted by Sanyo, [Commerce] erred as a matter of law in rejecting Sanyo's sales

prices at this late date."  Id. at 14-15.

---

[13]     Indeed at oral argument, Sanyo conceded that there was no evidence in the record
to supports its direct reliance on Commerce's prior methodology.

[14]     In addition, in Shikoku, the government could not demonstrate that the new
methodology was an improvement whereas in this case, Commerce implemented its new
methodology to prevent the manipulation of sales transactions.

While its facts may at first blush appear indistinguishable, the Court finds that Cinsa, S.A., 966 F. Supp. 1230, involved a different issue than the one present here.  In Cinsa, S.A., "[i]n the first three administrative reviews, Commerce accepted the pricing from the related supplier in its calculation of constructed value of the subject merchandise.  In the fourth administrative review . . . Commerce departed from this methodology and used BIA in its CV calculation."  966 F. Supp. at 1236.  The Court held that Plaintiffs "effectively shifted the burden to Commerce by providing a host of information explaining the reasons for the discount in [the related suppliers] price."  Id. at 1237.  The Court found that "Commerce did not subsequently meet its burden in determining that the transfer price was not negotiated at arm's length," id., and "that Commerce applied a different methodology in the fourth administrative review without providing reasons for its departure.  Id. at 1238.

The major difference between the case at bar and Cinsa, S.A. is that in this case Commerce provided a reasonable explanation for its change in its arm's length test, while in Cinsa, S.A. "Commerce did not provide adequate reasons for departing from its prior methodology."  Id.[15]  The Court's reasoning in Cinsa, S.A. actually supports Commerce here.  Id. ("Commerce can reach different determinations in separate administrative reviews but it must employ the same methodology or give reasons for changing its practice.").

Finally, Sanyo asserts that "[i]f [Commerce] had properly articulated its change of policy during the course of the fact finding segment of its Annual Review, Sanyo could have submitted

---

[15]        On remand, Commerce accepted the related party pricing originally supplied by Cinsa.  Cinsa, S.A. v. United States, 976 F. Supp. 1034, 1035 (CIT 1997).

additional evidence."  Sanyo's Comments at 13.  The Court will not speculate what additional

type of evidence Sanyo could have provided; certainly Commerce's threshold arm's length test

was based on the number of sales to unrelated dealers, and Commerce already possessed that

information.  In any event, while "the ITA is not required to accept new information during the

course of the remand unless this Court explicitly tells it to do so," Federal-Mogul Corp. v. United

States, 17 CIT 1093, 1102, 834 F. Supp. 1391, 1399 (1993) rev'd on other grounds, 63 F.3d 1572

(Fed. Cir. 1995), Sanyo failed to request permission from Commerce, and therefore, as

Defendant argued in its brief, Sanyo has failed to exhaust its administrative remedies.

Unemployment Compensation Comm'n v. Aragan, 329 U.S. 143, 155 (1946) ("A reviewing

court usurps the agency's function when it sets aside the administrative determination upon a

ground not theretofore presented and deprives the [agency] of an opportunity to consider the

matter, make its ruling, and state the reasons for its action.").


C.

Commerce's Determination To Disallow<br>
Sanyo's Level Of Trade Adjustment Claim Is<br>
Supported By Substantial Evidence And<br>
In Accordance With Law.


19 U.S.C. § 1677b(a)(4)(B) and the implementing regulation, 19 C.F.R. § 353.19 provide

that "[t]he comparison of the United States price with the applicable price in the market of the

country of exportation . . . generally will be made at the same commercial level of trade."  This is

to ensure that there be the proverbial "apples-to-apples"comparison between sales in the U.S. and

the home market.  NEC Home Elecs., Ltd. v. United States, 54 F.3d at 738-39.  The regulation,

additionally provides that where sales from different levels of trade are used in the calculations of

FMV and USP, "appropriate adjustments will be made for differences affecting price comparability."  19 C.F.R. § 353.19 (1988).  The party making the claimed level of trade adjustment has the burden of substantiating its claim.  NSK, Ltd., 969 F. Supp. at 53; Sugiyama Chain Co. v. United States, 19 CIT 903, 905, 891 F. Supp. 619, 621 (1995).

> For level of trade adjustments, Commerce's practice is to require a respondent to
>
> (1) request the adjustment;
> (2) "demonstrate that distinct, discernable levels of trade exist by describing the functions performed at each level" and
> (3) quantify the adjustment, "normally by demonstrating that it incurred differing selling expenses on sales to different levels of trade."

Id.; Final Redetermination at 9-10 (citing, *inter alia*, Sugiyama Chain Co., Ltd. v. United States, 880 F. Supp. 869 (1995)).[16]

In the Final Results, Commerce rejected Sanyo's claim for a level of trade adjustment. See Final Results, 52 Fed. Reg. at 8943.[17]   Sanyo contested that determination in Sanyo I, and the Court remanded the level of trade adjustment issue to be reconsidered only if Commerce continued to determine FMV on the basis of the sales price from Sanyo's related distributors to unrelated dealers.  Since Commerce has determined that it should continue to base FMV on

---

[16]        Although Commerce cites to Sugiyama Chain Co., 880 F. Supp. at 869, the Court notes that in that case the Court remanded the level of trade adjustment issue back to Commerce for failure to adequately explain its rationale.  Id. at 875.  The correct cite is Sugiyama Chain Co. v. United States, 19 CIT 903, 891 F. Supp. 619 (1995).

[17]        "Because Sanyo did not demonstrate what portion of the distributors' selling expenses were solely related to their sales of comparison models, we disallowed these expenses as differences in levels of trade."  Final Results, 52 Fed. Reg. at 8943.

downstream sales, Sanyo has reasserted its entitlement to a level of trade adjustment to account

for the fact that its home market sales (sales to unrelated dealers) were compared to United States

market sales (sales to distributors) at a different level of trade.  Sanyo's Comments at 16.

Sanyo asserts that, contrary to Commerce's claim, it provided enough evidence  to

demonstrate that distinct levels of trade exist.  See Sanyo's Comments at 17 (stating that it did

submit "comprehensive documentation in support of the adjustment").  Moreover, Sanyo

contends that it demonstrated what portion of the distributors' selling expenses were solely

related to their sales of comparison models.  Sanyo's Comments at 18.  For support, Sanyo points

to a "Profit & Loss for C-46VP1" analysis which "sets forth the quantity, value and expenses of

the comparison projection television sets (model C-46VP1), sold by Sanyo's distributors in the

home market."  Id.  While Sanyo concedes that the administrative record does not contain the

same quality and quantity of evidence for the level of trade claim as other circumstance of sales

adjustments, it notes that it did not expect Commerce's "mid-stream" change in its arm's length

test.  Id.  at 17.

Additionally, Sanyo argues that for this claimed adjustment, it relied on the test used in

Countertop Microwave Ovens From Japan; Final Determination of Sales at Less Than Fair

Value, and Exclusions From Final Determination of Sales at Less Than Fair Value, 45 Fed. Reg.

80157, 80159 (1980) (hereinafter "Microwave Ovens from Japan") ("[W]e made an adjustment

equal to the total amount of the weighted average expenses and profits (gross margins)

experienced by the four distributors during the six month period April through September

1979.").  That test, according to Sanyo, did not require the significant and comprehensive data

required by Commerce here.  Sanyo argues that the other determinations allowing level of trade

adjustments relied upon by the Commerce were issued only after the Fourth POR, and the only

other contemporaneous determination is not on point.  Sanyo's Comments at 17-18 (citing Color

Television Receivers from Korea, 51 Fed. Reg. 41365, 41376  (comment 102) (1986).

Commerce argues that Sanyo did not carry its burden of proof with respect to the level of

trade adjustment.   Although Sanyo fulfilled the first requirement by requesting a level of trade

adjustment,[18] Commerce asserts that Sanyo did not "demonstrate that distinct, discernable levels

of trade exist between the sales in the United States and the home market sales from Sanyo's

related distributors to unrelated dealers." Government's Response at 18-19 (citing Final

Redetermination at 8-11).  Moreover, Commerce argues that even if Sanyo successfully proved

entitlement to a level of trade adjustment, Sanyo has not fulfilled the third prong by

demonstrating "what portion of the distributors' selling expenses were solely related to their sales

of comparison models."   Id. at 19.

The Court finds that the position of Commerce is reasonable.  In this case, it is apparent

that Commerce was not provided with substantial evidence of different commercial levels of

trade or the requisite details regarding Sanyo's distributors cost differentials.  Hercules, Inc. v.

United States, 11 CIT 710, 750, 673 F. Supp. 454, 487 (1987) ("Commerce cannot adjust prices

for level of trade differences in the absence of quantifying evidence to substantiate the request.").

---

[18]      Sanyo requested a level of trade adjustment in its Prehearing Brief.

Implementation of the level of trade adjustment prescribed by 19 CFR § 353.19 (1988) is

left to the reasonable discretion of the expert agency, the ITA. See Bowe Passat Reinigungs-Und

Waschereitechnik GMBH v. United States, 980 F. Supp. 1262, 1267 (CIT 1997) ("Commerce

exercises broad discretion in granting or denying a level of trade adjustment.").  However, "[t]he

Court [has recognized] that Commerce cannot establish an unreasonably high burden for

plaintiffs seeking a level of trade adjustment." Sugiyama Chain Co., Ltd., 19 CIT at 913, 891 F.

Supp. at 627-628.


In order to ascertain whether distinct commercial levels of trade exist, Commerce will

ordinarily examine the type and function of the first unrelated buyer in the chain of commerce

("the functional test").  Ad Hoc Committee of AZ-NM-TX-FL Producers v. United States, 16

CIT 1008, 1010, 808 F. Supp. 841, 843 (1992), rev'd on other grounds, 13 F.3d 398 (Fed. Cir.

1994); Laclede Steel Co. v. United States, 18 CIT 965, 977(1995); Sugiyama Chain Co., 19 CIT

at 905, 891 F. Supp. at 622 ("Commerce explains it looks to the function of the purchaser to

determine whether sales are made at different levels of trade.").  In this case, Sanyo's assertion

that it "reported sales to its distributors and its distributors reported resales to their customers,"

Sanyo's Comments at 18, is insufficient to overcome Commerce' test.[19]  Sanyo failed to describe

the functions performed by each customer at issue.  See Final Redetermination at 20 ("Sanyo has

made no presentation, cited no record evidence, and made no arguments in its comments

---

[19]     Sanyo conceded in its comments and during oral argument that it had not
submitted nor responded with the requisite amount of sufficiency to Commerce's questionnaire
regarding level of trade adjustments.  Sanyo explained that it believed that Commerce would not
reach the level of trade issue based on its implementation of the arm's length test used in the first
three reviews. See Sanyo's Comments at 17.

concerning its entitlement to a LOT adjustment because different levels of trade exist.").[20]  This

Court has previously held the mere assertion of the existence of two areas of sales at different

levels is insufficient to overcome Commerce's test.  Sugiyama Chain Co., 891 F. Supp. at 626

(refusing to identify levels of trade because Sugiyama neither described the functions performed

by the purchasers at issue nor defined the terms used to describe those purchasers).

Notwithstanding Sanyo's failure to submit evidence proving that different levels of trade

exist, Sanyo also failed to submit or indicate record evidence of Commerce's third requirement:

to quantify the adjustment by demonstrating that it incurred differing selling expenses on sales to

different levels of trade.  More specifically, Sanyo did not provide the information necessary to

support any claimed adjustment and did not demonstrate what portion of the distributors' selling

expenses were solely related to their sales of comparison models.  Additionally, Sanyo did not

suggest a calculation methodology using the data it submitted.  See NEC Home Elecs., 54 F.3d at

745 ("The ITA should consider whether either of these methods of computing a level-of- trade

adjustment [offered by respondents] is satisfactory.").  Because the burden is on the party

seeking the claimed adjustment, Commerce's decision to reject a level of trade adjustment by

Sanyo is supported by substantial evidence and in accordance with law.  Fundicao Tupy S.A. v.

United States, 859 F.2d 915, 917 (Fed. Cir. 1988) (affirming the denial of a level of trade

adjustment where respondent failed to proved it incurred different costs); Hercules, 11 CIT at

---

[20]      As stated in the Final Redetermination, "Sanyo did not describe the functions performed by the distributors at each LOT nor did it provide any explanation regarding different functions that might be performed at each LOT." Final Redetermination at 9.

752, 673 F. Supp. at 488 ("Commerce's requirement of proof, specifically proof of cost differences, did not run counter to the statute.").

Sanyo posits that it "reasonably believed that [Commerce] would rely on the same LOT analysis used in Microwave Ovens from Japan . . . without the necessity of submission of comprehensive documentation in support of the adjustment."  Sanyo's Comments at 17. Moreover, asserts Sanyo, there are no contemporaneous determinations with the "significant evidentiary requirements" found here.  Id.

In Microwave Ovens from Japan, Commerce based FMV on the home market price of related distributors to unrelated retailers and then adjusted FMV by the total amount of the "weighted average expenses and profits (gross margins) experienced by the [distributors] during the six month period . . . ." 45 Fed. Reg. at 80159.  This adjustment was made only after Commerce found that the average gross margins of the related distributors were similar to the average gross margins of unrelated distributors in the same industry.  Id.   However, Commerce, in the Study of Antidumping Adjustments Methodology and Recommendations for Statutory Change (November 1985) ("1985 Study") flatly rejected this methodology.  1985 Study at 55 (stating an unwillingness to assume that had the manufacturer sold directly to retailers, its expenses and profits associated with those sales would have been the same as the expenses and profits experienced by a distributor).  Moreover, despite the lack of guidance Sanyo may have found in contemporaneous determinations, and its contention at oral argument that it had only one week to respond to the Draft Redetermination, Sanyo knew of Commerce's need for

particular evidence regarding the level of trade adjustment, since at least issuance of the Final

Results.  Consequently, any request by Sanyo to open the administrative record must be rejected

for failure to exhaust administrative remedies since Sanyo never requested to submit additional

evidence to Commerce.  See Unemployment Compensation Comm's of Alaska, 329 U.S. at 155

("A reviewing court usurps the agency's function when it sets aside the administrative

determination upon a ground not therefore presented and deprives the [agency] of an opportunity

to consider the matter, make its ruling, and state the reasons for its action.").


        The Court is mindful of the fact that at the time this regulation was implemented,

Commerce rarely granted level of trade adjustment requirements, having found "it difficult, if not

impossible, however, to determine if and how differences in levels of trade affect price

comparability."  1985 Study at 54.   However, in this case, the Court is constrained to uphold

Commerce's decision as to the claimed level of trade adjustment because of Sanyo's failure to

meet its burden of supporting its claim.


## D.

### The Court Affirms Commerce's Recalculation
### Of Advertising Expenses.


        Since Commerce, in accordance with the Court's Order dated April 6, 1998, Sanyo, 9 F.

Supp. 2d at 694-696, calculated Sanyo's advertising and sales promotion expenses pursuant to the

product-line methodology using the figures originally submitted by Sanyo, the Court affirms

Commerce's determination of this issue.

**E.**

The Court Affirms Commerce's
Treatment Of Commodity Tax..

Since Commerce, in accordance with the Court's Order dated April 6, 1998, id. at 697-98,

recalculated the rebated Japanese commodity taxes pursuant to 19 U.S.C. § 1677a(d)(1)(C)

(1988) (removing the adjustment for taxes rebated on U.S. sales from the calculation of the net

home market price and adding this amount to the USP), the Court affirms Commerce's

determination of this issue.

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court sustains Commerce's Final Redetermination as

supported by substantial evidence and in accordance with law.

_____
Evan J. Wallach, Judge

Dated:          June 4, 1999
                New York, New York