Slip Op. 00- 130

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

<table>
<tr><td>

AMERICAN SILICON TECHNOLOGIES,
ELKEM METALS COMPANY, GLOBE
METALLURGICAL, INC. and SKW
METALS & ALLOYS, INC.,

        Plaintiffs,

v.

UNITED STATES

        Defendant,

    and

ELETROSILEX BELO HORIZONTE,

        Defendant-Intervenor.

</td><td>

: <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> :

</td><td>

**Before: MUSGRAVE, JUDGE**

Court No. 94-09-00555

</td></tr>
</table>

[The Court remands the Department of Commerce's determination in *Silicon Metal from Brazil; Final Results of Antidumping Duty Administrative Review*, 59 Fed. Reg. 42,806 (Aug. 19, 1994), as to Companhia Brasileira Carbureto de Calcio and Companhia Ferroligas Minas Gerais-Minasligas and sustains it as to Eletrosilex Belo Horizonte].

Dated: October 13, 2000

*Baker & Botts*, *L.L.P.* (*William D. Kramer* and *Martin Schaefermeier*) for plaintiffs American Silicon Technologies, Elkem Metals Company, Globe Metallurgical, Inc. and SKW Metals & Alloys, Inc.

*David W. Ogden*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Reginald T. Blades, Jr.*), and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*John F. Koeppen*), of counsel, for defendant.

*Verner, Liipfert, Bernhard, McPherson & Hand* (*Wayne S. Bishop*) for defendant-intervenor Eletrosilex Belo Horizonte.

## **OPINION**

In this action, plaintiffs American Silicon Technologies, Elkem Metals Company, Globe Metallurgical, Inc. and SKW Metals & Alloys, Inc. (collectively "American Silicon"), domestic producers of silicon metal, contest several aspects of the final results of the first administrative review of the antidumping duty order on silicon metal from Brazil, *Silicon Metal from Brazil; Final Results of Antidumping Duty Administrative Review*, 59 Fed. Reg. 42,806 (Aug. 19, 1994)[1] ("*Final Results*"), issued by the International Trade Administration of the United States Department of Commerce ("Commerce" or "the agency"). This Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a) and 28 U.S.C. § 1581(c).

American Silicon previously moved for judgment upon the agency record pursuant to CIT Rule 56.2 requesting remand to Commerce for correction of eleven alleged errors. As Commerce consented to remand on eight of the issues, the Court remanded those issues and stayed the remaining three. *See American Silicon Technologies v. United States*, 21 CIT 501 (1997). After the initial remand results were issued, the Court, on motion of Commerce, ordered a second remand of one issue. *See American Silicon Technologies v. United States*, 22 CIT __, Slip Op. 98-22 (Mar. 5, 1998). After the second remand results were issued, the Court sustained the remand determinations on all eight issues and lifted the stay on the remaining three. *See American Silicon Technologies v. United States*, 23 CIT __, Slip Op. 99-94 (Sept. 9, 1999).

---

[1] The amendments made by the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994), do not apply in this action because this administrative review was commenced before January 1, 1995. *See AK Steel Corp. v. United States*, 21 CIT 1204, 1205 n.1 (1997) (citing *Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed Cir. 1995)).

The issues now before the Court are: (1) whether Commerce erred in calculating financial expenses for Companhia Brasileira Carbureto de Calcio ("CBCC"), a Brazilian producer of silicon metal, by using as best information available ("BIA")[2] a net financial expense figure which had been offset by both long-term and short-term interest income, rather than only short-term interest income; (2) whether Commerce erred by excluding from the calculation of constructed value the *imposto sobre a circulacao de mercadorias e servicos* ("ICMS") and *imposto sobre produtos industrialzados* ("IPI") Brazilian value-added taxes paid by CBCC and Companhia Ferroligas Minas Gerais-Minasligas ("Minasligas"), another Brazilian producer of silicon metal, on materials used to produce silicon metal; and (3) whether Commerce erred in calculating a dumping margin for Eletrosilex Belo Horizonte ("Eletrosilex"), also a Brazilian producer of silicon metal, based on sales of silicon metal during the period of review when Eletrosilex made no entries of silicon metal into U.S. customs territory during the period of review. For the reasons which follow, the Court remands the first and second issues to Commerce and sustains Commerce's determination on the third issue.

### *Standard of Review*

The Court shall uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law". 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

---

[2] Title 19, section 1677e(c) of the United States Code (1988) provides:

> In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)).

*Discussion*

The Court first addresses the issue of whether Commerce erred by calculating CBCC's financial expenses using a net financial expense figure. In the *Final Results*, Commerce determined that it was appropriate and consistent with its "normal practice" to calculate CBCC's interest expenses on a consolidated basis with its parent company, Solvay do Brasil ("Solvay") because Solvay owned 99.8 percent of CBCC and facts indicated that "the degree of relationship influenced the structure of debt for the entire company." *Final Results*, 59 Fed. Reg. at 42,807. During verification Commerce requested source documents for Solvay's income and expenses, but CBCC did not provide this information. American Silicon alleges that this information would have enabled Commerce to "calculate any offset to total financial expenses for interest income derived from short-term investments of working capital, in accordance with established Department practice." Plaintiffs' Supplemental Brief at 10.

Due to CBCC's failure to provide the requested information, Commerce used BIA to determine CBCC's financial expenses. As BIA, Commerce derived a percentage from Solvay's financial statements and "applied [this percentage] to each month's [cost of manufacture] to ensure that CBCC's [cost of production] data fully reflected interest expenses." *Final Results*, 59 Fed. Reg. at 42,807. American Silicon alleges that in calculating this percentage, Commerce

> erroneously used a *net* financial expense figure that had been reduced by *all* interest income, including long-term *and* short-term interest income. In doing so, the Department violated its established practice . . . which is to offset financial expenses only with *short-term* interest income. Moreover, . . . the Department calculated

financial expenses more favorable to CBCC than it would have calculated had CBCC been forthcoming and provided the information requested by the Department.

Plaintiffs' Supplemental Brief at 10-11 (emphasis in original).

First, the Court considers whether Commerce improperly deviated from its established practice. Commerce agrees that its "practice is to reduce financial expenses by only short-term interest income when [it] has adequate information to apply that method properly." Defendant's Supplemental Brief in Reply to Plaintiff's Supplemental Brief ("Defendant's Supplemental Brief") at 5. This Court has previously recognized that "an administrative agency has the authority to change or revoke its policies and practices, if a reasonable explanation is provided for such a change." *Sanyo Elec. Co., Ltd. v. United States*, 23 CIT __, __, 86 F. Supp. 2d 1232, 1241 (1999) (citing *Rust v. Sullivan*, 500 U.S. 173, 186-87 (1991)); *accord Queen's Flowers de Columbia v. United States*, 21 CIT 968, 976, 981 F. Supp. 617, 625 (1997); *Citrosuco Paulista, S.A. v. United States*, 12 CIT 1196, 1209, 704 F. Supp. 1075, 1088 (1988). The Court's "review of an agency's change of position or practice will center on whether the action was arbitrary and capricious", and the Court will find the change arbitrary unless it is supported by substantial evidence. *Sanyo Elec. Co.*, 86 F. Supp. 2d at 1241 (citation omitted). In the instant case, Commerce explains that "the information chosen . . . as BIA did not allow separation of long-term from short-term interest income, [therefore] Commerce had the choice of reducing financial expenses by the interest income as reported upon the financial statements (which it chose) or not reducing financial expenses at all (which it did not choose)." Defendant's Supplemental Brief at 5. In the absence of evidence to the contrary, the Court finds that this explanation adequately justifies Commerce's departure from its established practice.

Next, the Court considers whether Commerce's decision to offset financial expenses by all reported interest income is otherwise in accordance with law. It is well established that Commerce

has discretion in choosing and applying BIA. *See Allied Signal Aerospace Co. v. United States*, 996 F.2d 1185, 1191 (Fed. Cir. 1993) ("[B]ecause Congress has 'explicitly left a gap for the agency to fill' in determining what constitutes the best information available, the ITA's construction of the statute must be accorded considerable deference."). Nevertheless, "[t]he purpose behind permitting Commerce to resort to BIA is to induce respondents to provide Commerce with requested information in a timely, complete, and accurate manner". *National Steel Corp. v. United States*, 18 CIT 1126, 1129, 870 F. Supp. 1130, 1134 (1994) (citations omitted). Accordingly, the Court has recognized that "[a]lthough the ultimate purpose of BIA is not to punish, BIA is intended to be adverse". *National Steel Corp*., 18 CIT at 1132, 870 F. Supp. at 1136 (citing *Pulton Chain Co. v. United States*, 17 CIT 1336, 1339 (1993)).[3]

In the instant case, Commerce resorted to BIA after CBCC failed to provide source documents which allegedly would have enabled Commerce to determine the amount of Solvay's short-term interest income. Plaintiffs' Supplemental Brief at 10. Nothing on the record indicates that Commerce's application of BIA was adverse to CBCC in spite of the fact that the interest deduction was larger than it would have been under normal circumstances. Based on the facts presented, and in the absence of evidence to the contrary, the Court concludes that CBCC benefitted from the use of Solvay's net financial expense figure as BIA. Therefore, Commerce's decision to use Solvay's net financial expense figure is not in accordance with law. The Court remands this

---

[3] Although *National Steel* involved the use of "total BIA" and the instant case involves the use of only "partial BIA," the principle that BIA should be adverse applies in both instances. *See Ad Hoc Committee of AZ-NM-TX-FL Producers of Gray Portland Cement v. United States*, 18 CIT 906, 915 n.22, 865 F. Supp. 857, 865 n.22 (1994) ("In a 'partial BIA' situation the only instance in which BIA is not adverse is when there is an inadvertent gap in the record . . . or when the missing data is beyond the control of the respondent.").

issue to the agency, which shall either (1) demonstrate that CBCC does not benefit from Commerce's use of Solvay's net financial expense figure, or (2) recalculate the percentage used to determine CBCC's cost of production using either Solvay's gross financial expense figure or other appropriate information as BIA.

The Court next considers the issue of whether Commerce erred by excluding from the calculation of constructed value the ICMS and IPI taxes paid by CBCC and Minasligas on materials used to produce silicon metal. Recently in *Camargo Correa Metais, S.A. v. United States*, 200 F.3d 771 (Fed. Cir. 1999), the Federal Circuit held that "unless ICMS are remitted or refunded 'upon exportation', they are properly included in the constructed value of the exported merchandise." *Id*. at 774. In light of this decision, Commerce states that it now agrees "that 'the ICMS and IPI taxes paid by CBCC and Minasligas . . . must be included in [constructed value].'" Defendant's Supplemental Brief at 3 (quoting Plaintiff's Supplemental Brief at 6). Accordingly, the Court remands this issue to Commerce and instructs the agency to recalculate constructed value for CBCC and Minasligas. In the recalculation, Commerce shall include ICMS and IPI taxes in conformity with the Federal Circuit's holding in *Camargo*.

Finally, the Court addresses the issue of whether Commerce erred in calculating a dumping margin for Eletrosilex even though Eletrosilex made no entries of silicon metal into U.S. customs territory during the period of review. Presently before the Court is a motion by American Silicon for severance and dismissal of Count II of the Complaint, which pertains to this issue. As this motion is unopposed, it is hereby granted, and Count II of the Complaint is dismissed. Furthermore, as all issues in this action concerning Eletrosilex have now been resolved, the Court sustains Commerce's dumping margin determination for Eletrosilex.

## *Conclusion*

For the foregoing reasons the *Final Results* are sustained as to Eletrosilex and remanded as to CBCC and Minasligas for further proceedings consistent with this Opinion.  Commerce shall submit its remand determination within 90 days of the date of this Opinion.  The parties shall then have 30 days to submit comments on the remand determination.  Any rebuttal comments shall be submitted within 15 days thereafter.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: October 13, 2000
       New York, New York